**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| SHANE W.,                                    ) | |
|        Plaintiff,                      ) | |
|                         ) | |
|    v.                                    ) | CAUSE NO.: 3:20-CV-346-JVB |
|                         ) | |
| KILOLO KIJAKAZI, Acting Commissioner         ) | |
| of the Social Security Administration,       ) | |
|        Defendant.                   ) | |

## OPINION AND ORDER

Plaintiff Shane W. seeks judicial review of the Social Security Commissioner's decision denying his applications for disability insurance benefits and supplemental security income and asks this Court to reverse that decision and remand this matter to the agency for either further administrative proceedings or an award of benefits. For the reasons below, this Court reverses the Administrative Law Judge's decision and remands this matter for further administrative proceedings.

## PROCEDURAL BACKGROUND

In Plaintiff's March 22, 2017, and February 2, 2018 applications for benefits, he alleged that he became disabled on May 1, 2017. After a November 26, 2018 hearing, the Administrative Law Judge (ALJ) found that Plaintiff suffered from the severe impairments of degenerative changes in the cervical, thoracic, and lumbar spine (status post lumbar and cervical fusion surgeries) and left hip osteoarthritis due to dysplasia (status post total hip arthroplasty). (AR 17). The ALJ determined that Plaintiff did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and further determined that Plaintiff had

> the residual functional capacity [RFC] to perform sedentary work . . . except that he cannot climb ladders, ropes, or scaffolds and he can only occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. He also cannot crawl at all and

> he must avoid wet and slippery surfaces, unprotected heights, hazardous machinery, and driving. He is further able to occasionally use foot controls and occasionally reach overhead with his non-dominant (right) upper extremity. He must also use a cane for ambulation.

(AR 20). The ALJ found that, in light of Plaintiff's RFC, Plaintiff was unable to perform his past relevant work. However, the ALJ found that Plaintiff was able to perform the representative occupations of document preparer, addresser, and call out operator. Accordingly, the ALJ found Plaintiff to be not disabled from May 1, 2017, through February 27, 2019, which is the date of the ALJ's decision. This decision became final when the Appeals Council denied Plaintiff's request for review.

## STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) Whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether [he] can perform [his] past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

2

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## ANALYSIS

Plaintiff argues that the ALJ erred by providing only a perfunctory, inaccurate analysis of a relevant listing and by improperly determining that Plaintiff can perform work at the sedentary exertional level.

### A. Listing 1.04(a)

At the third step of the sequential process, ALJs must determine whether a social security claimant has an impairment that the Commissioner considers presumptively disabling. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). The ALJ must name the listings considered and provide a more than perfunctory analysis of the listings. *Id.* Where contradictory evidence is in the record, the ALJ is not permitted to rely solely on state agency reviewing physician opinions and provide little additional explanation. *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006).

The ALJ's entire discussion of listings is:

> There is no medical opinion of record and no medical evidence in the record to support a finding that the claimant meets or equals the requirements of any of the listings in the Regulations, including listings 1.02, 1.03, and 1.04. There is no evidence in the record that the claimant has had spinal arachnoiditis, that he has muscle atrophy or significant deficits in muscle strength plus reflex or sensory deficits, or that he is unable to ambulate effectively, although he is using a cane.

(AR 19-20). However, the ALJ's discussion of relevant medical evidence elsewhere in the decision may support the step three analysis. *Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021).

Plaintiff contends that there is insufficient analysis regarding Listing 1.04(a), which covers disorders of the spine "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" with "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle

3

weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. 404, Subpt. P, Appx. 1 § 1.04(a).

Specifically, Plaintiff argues that the ALJ's statement that there is no evidence of muscle atrophy or significant deficits in muscle strength plus reflex or sensory deficits is contradicted by the record. Regarding motor loss, the record notes decreased grip strength, (AR 768); reduced flexion, extension, adduction, and abduction, (AR 940); and Plaintiff's reports of weakness, *e.g.* (AR 581, 777, 815). Regarding sensory deficits, Plaintiff reported numbness on multiple occasions. *E.g.* (AR 255, 482, 628, 638, 653, 777).

The Commissioner responds that the ALJ addressed Listing 1.04(a) by indicating that there was no evidence of muscle atrophy, muscle strength deficits, or reflex or sensory deficits. The Commissioner also asserts that the ALJ addressed the evidence related to the medical findings necessary for Listing 1.04(a) elsewhere in her decision. The Commissioner points to the ALJ's discussion of Dr. Gupta's opinion and records form Dr. Gottlieb in support of a finding that Plaintiff does not meet Listing 1.04(a). The Commissioner's argument misses the point. The Commissioner adequately shows that there is evidence in the record to support the ALJ's finding regarding the Listing 1.04(a), but the Commissioner has not shown that the ALJ's statements leading to that finding are accurate. The ALJ did not merely say that, upon weighing the evidence, Plaintiff does not meet the listing—she said that there was *no evidence* of muscle atrophy or significant deficits in muscle strength plus reflex or sensory deficits. The Commissioner has not shown that there is no evidence of significant strength deficits and sensory or reflex deficits. Further, Plaintiff has identified portions of the record that provide some evidence of "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex

loss," as required by the listing. 20 C.F.R. 404, Subpt. P, Appx. 1 § 1.04(a). The evidence Plaintiff identifies is enough, per *Ribaudo*, to require a more detailed analysis than that provided by the ALJ. Additionally, given the record evidence identified by Plaintiff, the Court cannot be assured that the ALJ considered the important evidence in reaching her decision. The Court remands this matter based on errors in the step three analysis.

Additionally, Plaintiff has emphasized that a November 2017 myelogram demonstrated compression of the thecal sac. Given that the thecal sac surrounds the spinal cord and cauda equina, the Court anticipates that a medical opinion regarding the impact of this compression on Plaintiff's abilities would be useful.

### B. Sedentary Work

Plaintiff argues that the ALJ's finding that he could perform sedentary work is in error. Plaintiff contends that a physician's opinion should not have been disregarded and that hip imaging supports Plaintiff's claims for benefits.

Plaintiff argues that the ALJ did not sufficiently explain why he did not adopt the findings of consultative examine Dr. Gupta. To be sure, the Seventh Circuit Court of Appeals has said that "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled . . . can be expected to cause a reviewing court to take notice and await a good explanation." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014).

Plaintiff asserts that Dr. Gupta found that Plaintiff was unable to perform the standing, walking, and sitting requirements of sedentary work. However, Dr. Gupta's medical source statement says only that Plaintiff "has difficulty doing work related activities such as sitting, standing, walking, lifting, carrying and handling objects." (AR 768). It is unclear from this statement what length of time Dr. Gupta considered Plaintiff able to perform of these activities in

an 8-hour workday. It is clear that Dr. Gupta considered Plaintiff to have a less-than-full capacity to perform these activities, but Dr. Gupta also did not specifically opine that Plaintiff was incapable of performing these activities at the sedentary work level. It is unlikely, though, that someone with difficulty sitting would be able to do so for 6 hours in a workday, as sedentary work requires. The ALJ found Dr. Gupta's opinion not "particularly persuasive" since Dr. Gupta did not provide specific or quantitative limits of Plaintiff's functioning. The ALJ's point has some merit.

However, the Court agrees with Plaintiff that using the lack of spinal surgeries since the alleged onset date is not a logical reason to dismiss Dr. Gupta's opinion. Plaintiff has a history of spinal fusion surgeries that were not effective, leading to post-laminectomy syndrome. (AR 637, 644, 651). The ALJ does not point to any medical evidence indicating that further surgery would be warranted if Dr. Gupta's opinion were an accurate statement of Plaintiff's abilities.

The ALJ also noted Plaintiff's daily activities and found Dr. Gupta's opinion to be inconsistent with the daily activities. There is tension between the ALJ finding Dr. Gupta's opinion to lack specificity and also finding that Plaintiff's daily activities to be inconsistent with the opinion. Additionally, Plaintiff's activities as reported were performed in ways to accommodate his impairments—such as using a shower chair, (AR 235), needing assistive devices to dress himself, (AR 236), choosing a facial hair style that does not require Plaintiff to shave himself, *id.*, and shopping with a motorized shopping cart (AR 238). The ALJ has not built a logical bridge from the evidence of daily activities to her conclusion.

The Court also agrees that the ALJ, a layperson in regard to medicine, is not qualified to say that the lack of muscle atrophy or significant muscle strength deficits during Dr. Gupta's examination means that the examination does not support Dr. Gupta's opinion. It is apparent that Dr. Gupta believed other results from the examination to support the opinion, which include

findings of hand weakness due to pain and numbness; decreased grip strength and bilateral weakness due to pain; antalgic gait; difficulty stooping, squatting, standing from a sitting position, and getting on and off the examination table; and requiring a cane. (AR 768).

The Court agrees with the Commissioner that it is not for the Court to weigh the evidence and determine whether the state reviewing physicians' opinions or Dr. Gupta's opinions should carry more weight. The Court takes no position on this issue. Instead, the Court finds that the reasons the ALJ gave for the weight she assigned Dr. Gupta's opinions are insufficient to provide the good explanation for taking the unusual step of disregarding the opinion of the physician who examined Plaintiff on the agency's behalf. Remand is required on this basis, too.

Plaintiff also argues that an MRI showing hip etiology that ultimately required total replacement of his left hip, (AR 856, 908), was new and potentially decisive evidence. The state agency reviewing physicians did not have access to this MRI when they gave their opinions. "[N]ew and potentially decisive medical evidence" should be submitted to medical scrutiny. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). It is improper for an ALJ to "play doctor" and attempt to interpret medical reports on their own. *Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014).

The Commissioner argues that this evidence supports the ALJ's decision because Plaintiff had improved symptoms after the surgery. The surgery occurred after the alleged onset date. Thus, even if the surgery led to improvement, the MRI is evidence of Plaintiff's medical state prior to the surgery, which is relevant to the question of disability. Further, improvement on its own does not speak to the question of disability. A person may experience medical improvement and still be precluded from performing fulltime work. *See Dyer v. Berryhill*, 237 F. Supp. 3d 772, 777 (N.D. Ill. 2017) ("So the relevant question is whether, even with some improvement, he was still in too much pain to engage in the prolonged sitting needed to work a sedentary job."). This case is being

remanded on other grounds. On remand, the ALJ will have another opportunity to consider whether this MRI must be submitted to medical scrutiny and how to consider whether Plaintiff, despite improvement, still experiences disabling limitations.

### C. Award of Benefits

Though Plaintiff has requested remand for an award of benefits, the alternative requested relief of remand for further administrative proceedings is granted because the Court cannot say that "all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the alternative relief requested in Plaintiff's Brief [DE 24], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings. The Court **DENIES** the request for remand for an award of benefits.

SO ORDERED on July 16, 2021.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT